Franklin J. Rooks Jr., Esq.
PA Attorney ID: 309562
***Morgan Rooks, P.C.***
525 Route 73 North, Suite 104
Marlton, NJ 08053
(856) 874-8999
(856) 494-1707fax
fjrooks@morganrooks.com

*Attorney for Plaintiff Jennifer Gallinelli*

| | | |
|---|---|---|
| **JENNIFER GALLINELLI** | : | **IN THE UNITED STATES DISTRICT** |
| | : | **COURT FOR THE EASTERN** |
| *Plaintiff,* | : | **DISTRICT OF PENNSYLVANIA** |
| | : | |
| VS. | : | **DOCKET NO.** |
| | : | |
| | : | **CIVIL ACTION** |
| **MEDICAL GUARDIAN, LLC** | : | |
| | : | **JURY TRIAL DEMANDED** |
| *Defendant.* | : | |
| | : | **COMPLAINT** |

## PRELIMINARY STATEMENT

Jennifer Gallinelli (the "Plaintiff") by and through her counsel, Franklin J. Rooks, Jr., Esquire, brings this lawsuit against Medical Guardian, LLC (the "Defendant") seeking all available relief under the Federal Equal Pay Act, the Pennsylvania Wage Payment and Collection Law, and the Fair Labor Standards Act, and the

## JURISDICTION

1. This civil controversy arises under that laws of the United States, and jurisdiction in conferred upon this court, pursuant to 28 U.S.C. §1331.

2. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for claims arising under the laws of the Commonwealth of Pennsylvania.

## VENUE

3. All actions complained of herein took place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

4. Venue is proper in the judicial District as provided by 28 U.S.C. §1391(b).

## PARTIES

5. Plaintiff is an adult female who resides in Delaware County, Pennsylvania.

6. Defendant is a limited liability company registered with the Pennsylvania Department of Corporations with an entity identification number of 564761.

7. Defendant's principal headquarters are located at 1818 Market Street, Suite 1200, Philadelphia, Pennsylvania 19103.

## FACTUAL BACKGROUND

8. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

9. Upon information and belief, Defendant is a covered entity for purposes of the Fair Labor Standards Act ("FLSA").

10. Defendant hired Plaintiff on a full-time basis on or about March 2019.

11. Prior to becoming employed by Defendant, Plaintiff had 20 years of sales experience.

12. Defendant provides medical alert systems which allows its user to press a button to connect with a monitoring center.

13. Upon information and belief, Defendant's business had three departments – the "Sales" department; the "Retention" department; and the "Upsell" department.

14. Defendant hired Plaintiff to run the "Upsell" department.

15. The "Upsell" department was a newly created position.

16. Plaintiff was responsible for growing the Upsell department.

17. Defendant hired Plaintiff at an annual salary of $50,000.00 plus commission based on her department's sales.

18. Plaintiff later learned that her sales commissions were capped at $30,000.00 (thirty-thousand dollars) per year.

19. Upon information and belief, Mark Berlenbach, a Caucasian male, was a manager of Defendant's Sales department.

20. Upon information and belief, Defendant compensated Berlenbach at a base salary of $60,0000 (sixty-thousand dollars) plus commission.

21. Upon information and belief, Berlenbach's commission was not subject to an annual cap.

22. Upon information and belief, Adam Hughes, a Caucasian male, was also manager of Defendant's Sales department.

23. Upon information and belief, Defendant compensated Hughes at a base salary of $60,0000 (sixty-thousand dollars) plus commission.

24. Upon information and belief, Hughes' commission was not subject to an annual cap.

25. Defendant provided Plaintiff with sales objectives that she was required to achieve in order to receive the sales commission.

26. In her first month of employment, Plaintiff exceeded her performance objectives.

27. Plaintiff exceeded her performance objectives every month thereafter during the course of her employment with Defendant.

28. Defendant capped Plaintiff's earnings under her sales commission program; upon information and belief, the commissions of the Defendant's male managers were not subject to any cap.

29. In the first week of January 2020, Plaintiff spoke with Mark Leighton, Defendant's Chief Operative Officer, during a monthly sales meeting about the cap on her sales commission compensation.

30. Mr. Leighton informed Plaintiff that there would be a new commission structure given to her at the end of January.

31. Plaintiff complained to Robert Smedley, Defendant's Vice President of Sales, because she believed that her commissions were inaccurate.

32. In February 2020, Plaintiff again spoke with Mr. Leighton and Mr. Smedley during a monthly meeting about the inaccuracy in her sales commission compensation that appeared in her paychecks.

33. Mr. Leighton and Mr. Smedley informed Plaintiff that she would have a new commission structure in place by the end of the month.

34. Upon information and belief, Defendant discriminated against Plaintiff because of her female gender, with respect to the commission compensation.

35. Upon information and belief, Defendant's male managers – Berlenbach and Hughes, performed work that was the same or substantially similar to the work performed by Plaintiff.

36. On March 19, 2020, Defendant instructed its employees to work from home, due to the COVID-19 pandemic.

37. When attempting to log onto Defendant's computer system, Plaintiff discovered that she had been locked out; her access was denied.

38. Several minutes after she attempted to logon, Plaintiff received a text message from one of her co-workers, Jacob Cuervo. The text message contained a screen shot of a message

generated by Mr. Smedley which notified Plaintiff's co-workers that she [Plaintiff] was terminated.

39. On March 19, 2020, Plaintiff sent an email to Defendant's Chief Executive Officer, Geoff Gross, Mr. Smedley, and Mark Leighton, Defendant's Chief Operating Officer. Plaintiff's email stated that she attempted to log into the computer system and was locked out.

40. Plaintiff's email went on to say that she was informed by her team members that her employment with Defendant was terminated. Plaintiff requested that Defendant confirm the status of her employment.

41. None of the three individuals emailed – Mr. Gross, Mr. Smedley, and Mr. Leighton – provided Plaintiff with the courtesy of a reply regarding the status of her employment with Defendant.

42. Plaintiff suffered economic damages as a consequence of Defendant's termination of her employment after she complained about unequal pay and unequal commission structure as it relates to Berlenbach and Hughes, Defendant's male managers.

## COUNT I

## VIOLATION OF THE EQUAL PAY ACT

43. All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

44. The Federal Equal Pay Act ("EPA") prohibits discrimination on the basis of sex between employees with respect to compensation for the same or substantially the same work, except when the differential is the result of "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d).

45. Plaintiff, as a female employee, occupies a protected class.

46. Under the EPA, the term "wages" is broad enough to include the male employees' fringe benefits. 29 C.F.R. § 1620.10.

47. A disparity in fringe benefits between employees of opposite sexes can be used to establish a violation of the Equal Pay Act." Prise v. Alderwoods Group, Inc., 657 F.Supp. 2d 564, 614 (W.D. Pa. 2009), citing 29 C.F.R. § 1620.11.

48. To establish a prima facie case of an employer's violation of the Federal Equal Pay Act, a plaintiff must demonstrate that employees of the opposite sex were paid differently for performing equal work, *i.e.,* "work of substantially equal skill, effort and responsibility, under similar working conditions." Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000).

49. Skill includes a consideration of such factors as experience, training, education, and ability. 29 C.F.R. § 1620.15(a).

50. Effort is concerned with the measurement of the physical or mental exertion needed for the performance of a job. 29 C.F.R. § 1620.16(a).

51. Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation. 29 C.F.R. § 1620.17(a).

52. Once the plaintiff has set forth a prima facie case, the burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses referenced in Section 206(d). Stanziale at 107.

53. Upon information and belief, Plaintiff had more sales experience than each of her male counterparts.

54. Plaintiff occupied a parallel position to Defendant's other managers – Berlenbach and Hughes.

55. Upon information and belief, Plaintiff's base salary was $10,000.00 (ten thousand dollars) less per year than Berlenbach and Hughes.

56. Plaintiff's position required the same sales responsibilities as Berlenbach and Hughes.

57. Plaintiff's position required the performance of the same work or substantially similar work as Berlenbach and Hughes.

58. Plaintiff, Berlenbach, and Hughes were all employed by Defendant at Defendant's Philadelphia headquarters under the same working conditions.

59. The requisite level of skill for the positions held by Plaintiff, Berlenbach, and Hughes was substantially the same.

60. The requisite level of effort for the positions held by Plaintiff, Berlenbach, and Hughes was substantially the same.

61. The requisite level of responsibility for the positions held by Plaintiff, Berlenbach, and Hughes was substantially the same.

62. Plaintiff, Berlenbach, and Hughes were given performance objectives which entitled them to sales commission compensation.

63. Upon information and belief, Berlenbach, and Hughes were able to earn higher sales commissions than Plaintiff for positions that required the same or substantially the same skill, effort, and responsibility.

64. Plaintiff complained to Mr. Smedley and Mr. Leighton that she believed she was compensated for the same work as Berlenbach and Hughes but paid less than them.

65. Plaintiff complained to Mr. Smedley and Mr. Leighton that her commission structure was not commensurate with Berlenbach and Hughes.

66. Defendant failed to compensate Plaintiff in the same manner that it compensated Berlenbach, and Hughes for the same or substantially similar work.

67. Defendant discriminated against Plaintiff in terms of the compensation that it paid her for the same or substantially similar work that was performed by Berlenbach and Hughes.

68. As a direct and proximate consequence of Defendant's discriminatory pay practices, Plaintiff has suffered economic damages.

**WHEREFORE**, Plaintiff requests that judgment be entered against Defendant, in the form of compensatory damages, back-pay, front-pay, assumed damages, attorneys' fees, and all available punitive damages, along with all other and further relief as the Court may deem just and equitable.

## COUNT II

## RETALIATION UNDER FLSA

69. Paragraphs 1 through 42 are hereby incorporated by reference as if fully set forth herein.

70. The anti-retaliation provision of the Fair labor Standards Act ("FLSA") protects employees who are asserting their statutory rights. 29 U.S.C. § 215(a)(3).

71. Upon information and belief, Defendant compensated Berlenbach and Hughes with a base salary that was $10,000.00 higher than Plaintiff's base salary.

72. Upon information and belief, Defendant's commission compensation plan for Berlenbach and Hughes was greater than the commission compensation plan for Plaintiff.

73. To establish a prima facie case of retaliation under the FLSA, a plaintiff must show that (1) she engaged in a protected activity; (2) she was subjected to an adverse employment

action following her protected activity; and (3) there was a causal connection between the activity and the adverse action. Jones v. Amerihealth Caritas, 95 F.Supp. 3d 807, 814 (E.D. Pa. 2015).

74. Employers who violate the provisions of the FLSA are "[l]iable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

75. Plaintiff complained to Mr. Smedley and Mr. Leighton that she believed she performed substantially the same work as Berlenbach and Hughes but that Defendant paid her less than these male employees.

76. Plaintiff complained Defendant that she believed she was compensated for the same work as Berlenbach and Hughes but paid less than them.

77. Plaintiff complained that her commission structure was not commensurate with the commission structure of Berlenbach and Hughes for a position that required the same skill, effort, and responsibility.

78. Within several days of Plaintiff's complaints about her sales commission compensation not being on par with the commission compensation plan for Berlenbach and Hughes, Defendant terminated Plaintiff's employment.

79. Plaintiff suffered damages as a direct and proximate consequence of Defendant's retaliatory discharge of her employment.

**WHEREFORE**, Plaintiff requests that judgment be entered against Defendant, in the form of compensatory damages, back-pay, front-pay, assumed damages, attorneys' fees, and all

available punitive damages, along with all other and further relief as the Court may deem just and equitable.

## COUNT III

## VIOLATION OF PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

80. Paragraphs 1 through 42 are hereby incorporated by reference as if fully set forth herein.

81. The Pennsylvania Wage Payment and Collection Law ("WPCL") defines wages as "all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation." 43 Pa. Stat. Ann. § 260.2a.

82. At the time of hire, an employer must notify employees of the rate of pay and the amount of wage supplements that are to be paid to the employee. 43 Pa. Stat. Ann. § 260.4.

83. An employer must also notify employees of any changes in the rate of pay and/or changes in the amount of wage supplements that are to be paid to the employee before said changes are made. 43 Pa. Stat. Ann. § 260.4.

84. The WPCL requires employers to pay all "wages or compensation earned" up to the date of separation. 43 P.S. § 260.5.

85. Plaintiff was employed by Defendant.

86. Defendant represented to Plaintiff at the time of her hire that she would be compensated with a base salary plus a sales commission.

87. Plaintiff contends that she was not informed at the time of hire that her sales commissions would be subject to a $30,000.00 (thirty-thousand dollar) annual cap.

88. Defendant changed Plaintiff's sales commission compensation structure without any prior notification to her.

89. Defendant's unilateral change of compensation without notifying Plaintiff violated her rights under the Pennsylvania Wage Payment and Collection Law.

90. Plaintiff suffered damages as a direct and proximate consequence Defendant's failure to abide by wage protections afforded to her under the Pennsylvania Wage Payment and Collection Law.

91. Plaintiff's bonus compensation should not have been capped per the terms communicated to her at the time of hire and therefore, she has suffered economic damages by Defendant's arbitrary limitation of her commission compensation income.

**WHEREFORE**, Plaintiff requests that judgment be entered against Defendant, in the form of compensatory damages, back-pay, front-pay, assumed damages, attorneys' fees, and all available punitive damages, along with all other and further relief as the Court may deem just and equitable.

Respectfully submitted,

Date: October 28, 2020

By: s/Franklin J. Rooks, Jr.
Franklin J. Rooks, Jr., Esquire
*Attorney for Plaintiff*